The ATTIC CLUB, INC. et al., Appellants,

v.

TEXAS LIQUOR CONTROL BOARD, Appellee.

No. 11731.

Court of Civil Appeals of Texas, Austin.

Jan. 21, 1970.

Rehearing Denied Feb. 11, 1970.

---

Carr, Osorio, Palmer, Dickson, Long & Coleman, E. Eugene Palmer, Austin, for appellants.

Crawford C. Martin, Atty. Gen., Nola White, First Asst. Atty. Gen., Pat Bailey, Exec. Asst. Atty. Gen., Robert C. Flowers, Jay Floyd, Asst. Attys. Gen., Austin, for appellee.

PHILLIPS, Chief Justice.

The Attic Club, Inc. and the Black Garter Club, appellants, filed this class action for an injunctive relief against the Texas Liquor Control Board and its members. Appellants sought temporary and permanent injunctions against the enforcement of Rule and Regulation No. 56 of the Board. Appellee answered by general denial. After a hearing, the trial court refused appellants' request for a temporary injunction from which refusal this appeal was taken.

We reverse and render as hereinafter indicated.

Rule and Regulation No. 56 governs the operation of private clubs licensed under the Texas Liquor Control Act. Tex.Pen. Code Ann. art. 666. It covers such subjects as record keeping and reports, membership requirements, bonds, administrative discipline, food service, payment of accounts, and the definition of members and guests.

The questions presented are purely matters of law as the trial court specifically found probable injury, thus leaving only the legal question concerning appellants' right to a temporary injunction pending a trial of this cause on the merits.

Appellants are before this Court on five points of error, the first being the error of the trial court in refusing a temporary injunction against enforcement of all of Rule and Regulation No. 56 because same is invalid in toto in that appellee did not make a finding of facts as is required by Art. 666–7a, V.A.P.C.

We sustain this point.

Article 666–7a provides as follows:

"No rule or regulation for which a penalty is prescribed either by this Act or by the Board, shall be adopted by the Board except after notice and hearing. Notice of such hearing shall be given by publication in three (3) newspapers of general circulation in different sections of the State. Such notice shall specify the date and place of hearing and the subject matter of the proposed rule or regulation and shall constitute sufficient notice to all parties. The date of hearing shall be not less than ten (10) days from the date of publication of notice. At such hearing any person, either by himself or by attorney, may present relevant facts either in support or opposition thereto. *The Board shall upon a finding of facts*, have the authority and power to adopt, modify, nullify, or alter such rules or regulations.

Upon the final adoption of any rule or regulation, the Board shall cause the same to be published one time in a newspaper of general circulation in this State and the same shall have the force and effect of law as of the date of publication, unless a different date is specified therein. The publication thereof shall be sufficient notice to all parties. Any person who violates any valid rule or regulation or any provision thereof shall be guilty of a misdemeanor and upon conviction thereof shall be subject to the

penalty as prescribed in Section 41, Article I of this Act." (Emphasis added.)

There is a presumption that the Board made findings of fact in support of their order; however, this presumption is subject to rebuttal. Appellants introduced a certified copy of the Board's minutes during the relevant period of time; a certified copy of Rule and Regulation No. 56 and the order thereon; a copy of subsequent publication of Rule and Regulation No. 56. Appellants contend that they know of no other place where findings of fact could exist and that the admission of the foregoing evidence overcomes any presumption of validity of the rule and regulation; that nothing in the testimony of the witnesses for appellee indicates that such findings of fact were made. Consequently, in view of the specific mandate of the Legislature, the order is fatally defective.

We agree with appellants and hold that the lack of specific findings renders the order invalid. While there is no case specifically construing this section of the Act, the case is similar enough in fact and law with Skates v. City of Paris, 363 S.W.2d

425 (Tex.1963),[1] so as to be controlled thereby.

Appellants' point of error number two is the error of the court in refusing a temporary injunction against enforcement of Sections 3 and 4 of Rule and Regulation No. 56 because they are invalid and unenforceable for vagueness, indefiniteness and ambiguity.

We sustain this point also.

Section 3[2] of Rule and Regulation No. 56 deals with definitions of members and guests. Section 4[3] of Rule and Regulation No. 56 purports to prescribe the type of food service a club must provide. Appellants contend that both of these sections are so uncertain and ambiguous as to impose an impossible burden of compliance on the part of the clubs.

Section 3 states that a guest either must be "personally known" by the member or must be "admitted to the premises by personal introduction" of the member or must be in the "physical company" of the member. The question immediately arises with respect to identifying and introducing guests as to when is such a person "personally known" or "personally introduced?"

---

1. Also see Thompson v. Hovey Petroleum Co., 149 Tex. 554, 236 S.W.2d 491 (1951); Thompson v. Railroad Commission, 150 Tex. 307, 240 S.W.2d 759 (1951); Railroad Commission of Texas v. Roberdeau, 150 Tex. 506, 242 S.W.2d 881 (1951). The statute involved in the foregoing cases provided that the Railroad Commission should specify its findings or reasons for its decision in its order. Through this series of cases, the Court established that the insufficiency of findings of fact would serve to invalidate such order. Consequently, the non-existence of findings of fact would render the order void on its face.

2. Section 3 is as follows:
   "As provided in Article I, Section 15 (e) of the Texas Liquor Control Act, alcoholic beverages owned by members of a private club may be served only to and consumed only by a member, a member's family, or their guests.
   (1). The word 'member' shall mean a person who has been admitted to member-

ship as provided in Section 2 of this Rule and Regulation. (2). The term 'member's family' shall mean the spouse, parents and adult children of the member. (3). The word 'guest' shall mean an individual who is personally known by the member or one of the member's family and who is admitted to the club premises by personal introduction of, or in the physical company of, the member or one of the member's family. If a guest who is not in the physical company of a member or one of the member's family incurs an indebtedness, such indebtedness shall be billed to and paid by the member."

3. Section 4 is as follows:
   "A Private Club shall provide regular food service adequate for its members and their guests. The term 'food service adequate for its members and their guests' shall mean that complete meals shall be available on the club premises for service to members, their families, and guests."

Must the guest be a long-time friend, acquaintance or business associate, or may he become personally known by walking in the door and introducing himself? The language of the rule is broad enough and vague enough to encompass both such extremes. In view of the fact that penal sanctions are authorized for violation of the Act, the club must act at its peril on admitting the "guest."

■ Section 4 states · that in order to provide adequate food service " * * * complete meals shall be available on the club premises for service to members, their families and guests." Does that mean that a club must maintain a kitchen capable of cooking and serving meals on the premises? If, so, what constitutes a "complete meal." Or may the club utilize the menu and delivery service of a restaurant that delivers prepared meals or sandwiches? The language of the rule is broad enough and vague enough to encompass both situations, among others, that may be reasonably contemplated.

Because of the administrative and penal sanctions [4] lent to Rule and Regulation No. 56 by the Texas Liquor Control Act, the operators of private clubs are extremely interested in the actual meaning of Sections 3 and 4 and the enforcement views of the Board. Under the present state of the record they must proceed at their peril and at the whim of the Board's agents.

■ In Railroad Commission v. Fort Worth & D. C. Ry. Co., 161 S.W.2d 560 (Tex.Civ.App., Austin, 1942, writ ref'd w. o. m.), this Court held that an order, the violation of which subjects violator to a penalty, is invalid unless it is sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to the penalty. If a penal rule does not possess reasonable certainty, it must fall. 1 Tex.Jur.2d, Administrative · Law, Sec. 12.

Appellants' third and fourth points of error, briefed together, are the error of the court in refusing a temporary injunction against enforcement of sections 3 and 4 of Rule and Regulation No. 56 because they are invalid in that they are beyond the scope of the Board's rule-making authority under the Texas Liquor Control Act; because section 3 is invalid in that it contravenes Art. 1, Sections 8 and 10 of the Constitution of the United States and 31 U.S. C., Sec. 392.

We overrule these points.

Appellants contend here that under the statute the Board has no authority to prescribe rules and definitions relating to the statutory requirement to "provide regular food service adequate for its members and their guests," the Board's lack of statutory authority to define "guest" other than in a sense in which it is understood in common language; the Board's lack of authority to require that a guest, not in the company of the member, be forced to a credit system whereby the member answers for the credit of his guest.

■ Appellants' contention with respect to the Board's credit restriction applicable to guests, is that such rule denies the right of a guest to pay his just debts with legal tender. That the State of Texas, through the Board, is put in a position of prohibiting a club from accepting legal tender in contravention of 31 U.S.C., Sec. 392.

We cannot accept this argument.

The twenty first amendment to the Constitution of the United States expressly granted to each State the power to control the transportation and use of intoxicating beverages within its borders.

■ It has been uniformly held that a permit or license under the Texas Liquor Control Act is a mere privilege and such permittee or licensee had no vested right to sell or dispense intoxicating beverages.

4. Article 666–41, V.A.P.C. and other specific penalties set out in the Act.

State v. Bush, 151 Tex. 606, 253 S.W.2d 269 (Tex.1952).

Section 20 of Article XVI of the Constitution of Texas prohibits "open saloons" in this State and delegates authority to the Legislature the power and duty to define the term "open saloon" and enact laws against the same. Tex.Const., Art. XVI, Sec. 20. By the enactment of Article 666–3 in 1935, the Legislature undertook to perform this duty and defined an "open saloon." In 1961 the Legislature enacted Article 666–15(e), which is commonly referred to as the "Private Club Act." By the enactment of Article 666–15(e) the Legislature provided a condition or manner whereby a person could be served a mixed drink without violation of the constitutional and statutory prohibitions against an "open saloon."

■ As is evident by the definition of "private club" in Article 666–15(e)–1–1(a), the purpose of such a club is to provide for an organization of members for the promotion of some common object.

The Board is granted broad regulatory powers over the business of dispensing intoxicating beverages within the State and has the further power to adopt rules and regulations to accomplish this purpose. Neel v. Texas Liquor Control Board, 259 S.W.2d 312 (Tex.Civ.App., Austin, 1953, no writ); Texas Liquor Control Board v. Super Savings Stamp Company, 303 S.W.2d 536 (Tex.Civ.App., San Antonio, 1957, writ ref'd n. r. e.); Crowley v. Christensen, 137 U.S. 86, 11 S.Ct. 13, 34 L.Ed. 620 (1890).

■ Nor are we impressed with appellants' arguments with respect to the "doctrine of reenactment" and the doctrine of "long standing administrative interpretation." Article 666–7a granted the Board power to "adopt, modify, nullify, or alter such rules and regulations." Consequently, under the Act the Board has the authority to make reasonable rules and regulations with respect to the manner in which the private clubs operate and likewise has the

power to make reasonable changes in these rules and regulations subject to the proscriptions set out herein.

Appellants' fifth point of error is that of the court in refusing a temporary injunction against all of Rule and Regulation No. 56 in that it is an arbitrary and capricious interference with appellants' lawful actions and operations in violation of the due process and equal protection clauses of the state and federal constitutions. Const. Tex. art. 1, Sections 3 and 19; Constitution of the United States, Amendments 5 and 14.

We overrule this point.

■ Appellants contend that Rule 56 changed previous Rule 52 under which private clubs had long operated. That under the Board's previous Rule 52 many clubs had operated under a cash payment for drinks system and, additionally, a relatively broad interpretation of the status of a guest had been allowed for years. Consequently, club operators stand to lose financially on investments and commitments incurred under the previous regulation.

The constitutional right of the Board to make or change its rules and regulations has already been discussed. Whether or not the present rules are supported by substantial evidence would necessarily be determined by a trial on the merits. Jennings v. Texas Liquor Control Board, 300 S.W.2d 372 (Tex.Civ.App., Amarillo, 1957, no writ).

■ Appellants have a motion before us to strike a portion of appellee's brief relative to appellee's fifth counterpoint inasmuch as this point is an affirmative defense and was not urged on the trial court. Appellee's counterpoint urges us to dismiss appellants' suit as one against the State without prior authority to sue having been obtained from the Legislature. We overrule appellant's motion and likewise overrule appellee's counterpoint. It is too well settled to require citation of authority that where a board or commission acts illegally

it is not acting as the State; consequently, a suit against the Board or Commission to restrain the illegal act is not a suit against the State.

Inasmuch as the court found probable harm to appellants should the order in controversy be enforced, we reverse the judgment of the trial court and render judgment that appellants have their temporary injunction against the enforcement of Rule and Regulation No. 56 pending a trial of this cause on the merits.

Reversed and rendered.